**SIGNED this 11 day of February, 2010.**

                                                                                              _____
                                                                                                         **Marcia Phillips Parsons**
                                                                                              **UNITED STATES BANKRUPTCY JUDGE**
_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>   IMAGEPOINT, INC.,<br><br>                                Debtor. | No. 09-31225<br>Chapter 7 |
| DAVID H. JONES, Trustee,<br><br>         Plaintiff,<br><br>vs.<br><br>GM-DI LEASING CORPORATION,<br><br>         Defendant. | Adv. Pro. No. 09-3070 |

**M E M O R A N D U M**

APPEARANCES:

    Reggie E. Keaton, Esq.                              Kimberley A. Yourchock, Esq.
    Frantz, McConnell & Seymour, LLP          Honigman Miller Schwartz and Cohn LLP
    Post Office Box 39                                      2290 First National Bank Building
    Knoxville, Tennessee 37901                      600 Woodward Avenue
    *Attorney for David H. Jones, Trustee*        Detroit, Michigan 48226
                                                                         *Attorney for GM-DI Leasing Corporation*

**Marcia Phillips Parsons, United States Bankruptcy Judge**. In this adversary proceeding, the chapter 7 trustee seeks to collect a debt allegedly owed to the estate, arising out of the prepetition sale of signage by the debtor. Presently before the court is the defendant's motion for an order requiring the trustee to release the mechanic's liens that the debtor filed to secure payment, based on the contention that the debtor waived the right to file such liens in the parties' contracts. For the reasons discussed hereafter, the defendant's motion will be granted in part and denied in part. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

I.

On March 9, 2009, an involuntary chapter 7 bankruptcy petition was filed against ImagePoint, Inc. ("Debtor"), a Tennessee corporation with its principal offices in Knoxville, Tennessee, engaged in the business of manufacturing, assembling, and installing signs for various enterprises nationwide. An order for relief under chapter 7 was subsequently entered, as well as an order converting the case to chapter 11, with the Debtor operating for a while as a debtor in possession. On June 24, 2009, the case was reconverted to chapter 7, and David H. Jones was appointed trustee ("Trustee").

While operating as a debtor in possession, Debtor commenced on May 27, 2009, this adversary proceeding under 11 U.S.C. § 542(a) against defendant GM-DI Leasing Corporation, a Delaware corporation with its principal offices in Michigan. As set forth in the complaint, a judgment in the amount of $3,171,179.53 is sought for products sold to GM-DI for which the Debtor has not been paid. GM-DI has answered and counterclaimed, alleging breach of contract and breach of express and implied warranty.

In the motion presently before the court, GM-DI states that it and the Debtor were parties to a Supply Agreement dated February 1, 2004, wherein the Debtor agreed to manufacture and sell certain "Dealer Identification Signs" to GM-DI, who would then lease the signs to various General Motors dealers, with the Debtor to install the signs on the dealers' premises. Additionally, the Debtor and GM-DI were parties to a Sign Maintenance Agreement dated April 1, 2007, wherein the Debtor agreed to provide routine and emergency maintenance on all GM-DI owned signs located on the dealers' premises, in return for a monthly fee paid directly by GM-DI. According to GM-DI, in both agreements the Debtor waived the right to file a mechanic's lien to recover payment. GM-DI

2

alleges that notwithstanding this waiver, after the commencement of this proceeding the Debtor filed 36 different mechanic's and/or construction liens in five different states against the properties of GM-DI and/or the dealers. Citing the Debtor's contractual lien waiver, GM-DI seeks an order requiring the Trustee to release each of the liens. As additional support for its motion, GM-DI argues that if the Trustee is allowed to foreclose on properties owned by dealers who were not parties to the contractual relationship between the Debtor and GM-DI, the Trustee will circumvent GM-DI's setoff and recoupment rights in this adversary proceeding. Lastly, GM-DI argues that the Trustee should be required to release the liens because enforcement of the liens in the various states would be an undue burden on the bankruptcy estate and a waste of estate assets.

In response, the Trustee does not deny that the agreements between the Debtor and GM-DI contain lien-waiver provisions. The Trustee points out, however, that the Supply Agreement also provides that if any provision of the agreement contravenes applicable law, the provision shall be deemed deleted. Because the Supply Agreement also states that it is to be governed by Michigan law and because advance lien-waiver provisions are invalid under Michigan law, the Trustee argues that the lien-waiver provisions can not be enforced by GM-DI in any state. The Trustee rejects the notion that prosecution of the liens would waste estate assets, observing that such liens are designed to protect a party for the work it performed and for which it was not paid. Lastly, the Trustee denies that he is attempting to circumvent any setoff or recoupment rights held by GM-DI, noting that he will likely stay any foreclosure proceedings on the liens until resolution of this adversary proceeding.

To aid in this court's resolution of the motion, GM-DI has tendered copies of the parties' agreements. Additionally, GM-DI has submitted the affidavit of Lisa M. Sunshine, vice-president of GM-DI. Ms. Sunshine states in her affidavit that the Debtor was the sole provider of signs for GM-DI, and that pursuant to the parties' agreement, the Debtor contracted to manufacture, install and maintain signs on the premises of over 5,000 General Motors dealerships. According to Ms. Sunshine, the Debtor ceased business operations on January 9, 2009, leaving approximately 600 projects incomplete and numerous subcontractors unpaid. Ms. Sunshine states that because of claims made by these subcontractors against the dealers, GM-DI has paid 107 subcontractors an aggregate amount of $1,082,050 to settle their claims. According to Ms. Sunshine, "[t]he liens filed against the dealers by the Debtor have caused and continue to cause complications in that the liens

3

have inhibited the dealers in their efforts to obtain inventory financing or sell or refinance their underlying real property."

## II.

Upon review of the documents submitted, it is clear that the Debtor agreed to waive its right to file mechanic liens as a means of collecting payment from GM-DI. The parties' Supply Agreement, which identifies the Debtor as "Seller" and GM-DI as "Buyer," states in Paragraph 24, entitled "Waiver of Liens or Other Interest(s)," the following:

> 24.01  SELLER hereby waives the benefits of the mechanic's lien laws of the state in which any Dealership Identification Signs being fabricated, assembled, installed, serviced and repaired are located. SELLER agrees to produce a waiver of any claim to a mechanic's lien that any Subcontractor may have or might acquire as a result of work done under this Agreement from such Subcontractor before final payment by GM-DI. SELLER agrees to retain a copy of any such waiver for a period of six (6) years. Should SELLER fail to procure such waiver, SELLER shall promptly advise GM-DI of this fact. In the event a lien or claim is filed, SELLER shall, at its expense, procure a bond to indemnify GM-DI against such all lien and/or claim made by such Subcontractor relating to the Dealership Identification Signs and their installation.
>
> 24.02  In addition to the foregoing, SELLER hereby waives, releases and disclaims any interest in or to the Dealership Identification Signs or replacement parts fabricated, assembled, manufactured, installed, serviced and repaired by it under this Agreement, and agrees that its only right with respect to such Dealership Identification Signs or replacement parts is to receive payment for their fabrication, assembly, manufacture, installation, service and repair in accordance with the provisions of this Agreement.

Similarly, paragraph 18 of the parties' Sign Maintenance Agreement entitled "Mechanic's Liens, which identified the parties in the same fashion, provides:

> Seller on its own behalf and (insofar as it is able to contract in their behalf) on behalf of all its subcontractors waives the benefits of the mechanics' lien laws of each of the states in which dealership identification signs being repaired are located. Seller agrees to procure a waiver of any claim to a mechanics' lien which any subcontractor may have or might acquire as a result of work done under this Agreement for such subcontractor before payment by Buyer to Seller. Should Seller fail to procure such a waiver, Seller shall indemnify Buyer against any and all liens and claims, which may be made by such subcontractor relating to the dealership identification signs.

And, as the Trustee points out, also relevant to GM-DI's motion is Paragraph 46 of the

Supply Agreement, entitled "Governing Law," which provides:

> This Agreement shall be governed and construed according to the laws of Michigan. However, if any provision of this Agreement contravenes any applicable law, then such provision shall be deemed reformed or deleted, but only to the extent necessary to comply with any such applicable law, and the remaining provisions of this Agreement shall remain in full force and effect.

It is undisputed that notwithstanding the parties' agreement waiving the right to file liens and that their contract would be governed by Michigan law, advance lien waivers of the type set forth in the parties' agreements are invalid under the statutory law of Michigan. *See* Mich. Comp. Laws Ann. 570.1115(1) ("A person shall not require, as part of any contract for an improvement, that the right to a construction lien be waived in advance of work performed. A waiver obtained as part of a contract for an improvement is contrary to public policy, and shall be invalid. . . ."). It is also undisputed that advance lien-waiver provisions are statutorily invalid in three of the five states in which the Debtor filed mechanic's liens: Illinois, New Jersey, and New York. *See* 770 Ill. Comp. Stat. Ann. 60/1(d) (Illinois); N.J. Stat. Ann. § 2A:44A-38 (New Jersey); and N.Y. Lien Law § 34 (New York). Accordingly, the Debtor's lien waiver is ineffective as to the liens in these states. Absent the equitable considerations raised by GM-DI which the court will address subsequently, the Trustee will not be required to release the liens in Illinois, New Jersey, and New York.

The remaining two states in which the Debtor filed mechanic's liens are Iowa and Texas. The parties disagree as to the acceptability of advance lien waivers in these states, although it is clear that there is no statutory law invalidating such provisions. The Trustee maintains that regardless of the law in these two states, the lien waiver clause is unenforceable in any state because it is deemed deleted under the savings clause of Paragraph 46 of the Supply Agreement because it contravenes applicable law, i.e., Michigan law.

The Trustee, however, has read Paragraph 46 too broadly. It does not simply provide that if any provision contravenes Michigan law, it shall be deemed deleted. Rather, Paragraph 46 provides that if a contract provision "contravenes *any applicable law*, then such provision shall be deemed *reformed or deleted, but only to the extent necessary to comply with any such applicable law* . . . ." From this language, it is evident that the parties were seeking to preserve, to the extent possible under the law, the substantive terms of their agreement. Moreover, with the reference to "any applicable law," the parties were evidently aware that laws of other states may apply to their

5

agreement since it was contemplated that the parties would be doing business in a number of different states. Construing the provision as a whole, the savings clause of Paragraph 46 sets forth the intent of the parties to preserve the substantive content of the parties' agreement except to the extent that this content violated any applicable law, either the law that they had chosen or any other law that might apply.

This reading is compelled by § 187 of the Restatement (Second) of Conflict of Laws, which is followed in both Iowa and Texas. *See Cole v. State Auto & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980); *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). As set forth therein, when the enforceability of a contractual provision is at issue, "'the law of the state chosen by the parties to govern their contractual rights and duties will be applied' unless (1) there is no substantial relationship between the chosen state and the contract or other reasonable basis for the state's selection or (2) the application of the chosen state's law would violate a fundamental policy of a state which has a materially greater interest in the disputed issue and which would have supplied the governing law in the absence of the parties' selection." *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1988 Rev.)). This qualified enforcement of the parties' choice of law is designed to protect the justified expectations of the parties and make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract, the prime objectives of contract law. *See* Comment e to Restatement (Second) of Conflict of Laws § 187(2) (1988 rev.).

Nonetheless, where the parties' choice of law provision would defeat the expectations of the parties, as otherwise expressed in the agreement, the chosen law will not be applied. *Id.* As stated in Comment e to § 187, "The parties can be assumed to have intended that the provisions of the contract would be binding upon them. . . . If the parties have chosen a law that would invalidate the contract, it can be assumed that they did so by mistake." *Id.; see also Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d at 495 (citing *Infomax Office Sys., Inc. v. MBO Binder & Co. of Am.*, 976 F. Supp. 1247, 1254 (S.D. Iowa 1997) ("The general rule is that choice-of-law clauses should not be given effect to the extent their operation would invalidate the contract overall or an express provision thereof. . . . Instead, the choice of law should be considered a mistake as to the invalidating portion of chosen state law.")).

This restatement principle was applied by the Sixth Circuit Court of Appeals in *Kipin Industries, Inc. v. Van Deilen International, Inc.*, 182 F.3d 490 (6th Cir. 1999). As in the present case, the parties' agreement in *Kipin Industries* contained both a lien-waiver provision and a Michigan choice of law provision. At issue was the enforceability of a lien on property located in Kentucky, which unlike Michigan, permitted an advance contractual lien waiver. *Id.* at 492-93. The court of appeals observed that under § 187 of the Restatement (Second) of Conflict Laws:

> [T]he parties' choice of law is to be considered a mistake if the chosen law would invalidate an express provision of the contract. If, in such a situation, the express provision would be valid under the law of the state that would govern in the absence of an express choice-of-law provision, the mistaken choice-of-law provision should be ignored and the express contractual provision enforced.

*Id.* at 494. Based on the foregoing analysis, the court concluded that the parties' choice of Michigan law was a mistake as to the lien-waiver provision and that Kentucky law would govern, pursuant to § 196 of the Restatement of Conflict of laws which provides that when a contract is for the rendition of services, the law of the state of performance shall apply unless another state has a more significant relationship to the contract. *Id.* at 496. Accordingly, the court held that the parties' lien-waiver agreement was enforceable under Kentucky law. *Id.*

Returning to the case at hand, this court concludes that the parties' choice of Michigan law was a mistake with respect to the validity of lien-waiver provisions, since the choice invalidates the parties' lien-waiver agreement. To simply delete the lien-waiver provision because it contravenes Michigan law, as the Trustee argues, would be contrary both to the expressed intent of the parties prohibiting mechanic's liens and a primary objective of contract law, to preserve the parties' agreement to the extent possible. By "reforming" the agreement to view the choice of law as a mistake in this one limited area, the parties' agreement as to lien waivers will be preserved if it is permitted under "any applicable law."

As to liens in Iowa and Texas, this court assumes that the laws of these states would be the otherwise applicable law, since these are the places of performances and there is no indication that any other state has a more significant relationship to the contract. In this regard, the court agrees with GM-DI's assertion that neither of these states forbid an advance waiver of lien rights. With respect to Iowa, the Iowa Supreme Court has noted that "[a] mechanic's lien is a right or privilege given to a contractor to protect himself against loss for material and labor furnished. It is wholly

7

a creature of statute. We know of no reason . . . which would prevent the contractor waiving such a lien by contract so as to be binding in a contest between the property owner and the original contractor." *Eclipse Lumber Co. v. Bitler,* 241 N.W. 696, 698 (Iowa 1932) (quoting *Van Dyck Heating & Plumbing Co. v. Cent. Iowa Bldg. Co.*, 205 N.W. 650, 651 (Iowa 1925)). In a subsequent case, the Iowa Supreme Court observed that waiver of a lien "must be clear, satisfactory, unambiguous, and free from doubt," and "[a]ll doubts about the waiver must be resolved in favor of the lien." *Metro. Fed. Bank of Iowa v. A.J. Allen Mech. Contractors, Inc.*, 477 N.W.2d 668, 673 (Iowa 1991) (citing *Eclipse Lumber Co. v. Bitler*, 241 N.W. at 698).

The lien waiver between GM-DI and the Debtor clearly satisfies the Iowa standard. The language in the parties' agreements is clear and unambiguous that the Debtor was waiving the benefit of mechanic's liens. Accordingly, the Trustee must release the liens on properties located in Iowa.

Regarding the Texas liens, the courts of that state have held that "any lien may be waived by the holder. This may be done by a plain and clearly expressed intention to waive it or by conduct which is inconsistent with the continued existence thereof. The presumptions of law are against an intention to waive the lien." *Shirley-Self Motor Co. v. Simpson*, 195 S.W.2d 951, 954 (Tex. Civ. App. 1946); *see also Apex Financial Corporation v. Brown*, 7 S.W.3d 820, 830-32 (Tex. Civ. App.1999) (upholding lien waiver).

The Trustee cites the *Apex* decision for the proposition that in Texas, statutory lien waivers must be recorded to be effective and that constitutional mechanic's liens granted by the Texas state constitution may not be waived at all. Neither of these propositions are supported by the *Apex* decision. As to the recordation issue, the court did state in *Apex* that "a statutory mechanic's lien will not be enforceable if it has been discharged by recording a lien release signed by the lienholder." *Id.* at 830. However, this statement was in recognition of the fact that the lien holder had filed of record a lien release after having previously filed a notice of the mechanic's lien. There is nothing in the opinion to suggest that recordation is essential for a lien waiver. Regarding the constitutional lien argument, the court did observe that constitutional mechanic's liens are self-executing as between the original contractor and the owner. *Id.* The court did not state, however, that a constitutional mechanic's lien can not be waived, only that it had not been waived in that case

8

by the parties' agreement that expressly limited the waiver to "statutory" liens. *Id.* Moreover, at issue in the *Shirley-Self Motor* decision previously cited was whether the constitutional mechanic's lien had been waived, with the Texas court of appeals not only noting that "*any* lien may be waived by the holder," but also that a constitutional lien "exists from its creation until discharged, *waived*, or released, by the lienholder. *Shirley-Self Motor Co. v. Simpson*, 195 S.W.2d at 953-54 (emphasis supplied). Thus, the argument that Texas constitutional mechanic's liens may not be waived has no legal basis.

In the present case, the Debtor did not limit its waiver to statutory liens. To the contrary, the Debtor waived "the benefits of the mechanic's lien laws of the state . . . [and] agree[d] that its only right . . . is to receive payment . . . in accordance with the provisions of this Agreement." From this language, it is clear that the Debtor was waiving any type of mechanic's lien arising out of state law, whether arising by statute or from the state constitution. Accordingly, the Trustee must release the liens held by the estate on properties located in Texas.

### III.

The court turns now the equitable arguments raised by GM-DI. As previously noted, GM-DI argues that unless the Trustee is required to release all of the liens filed by the Debtor, the Trustee will be able to circumvent GM-DI's right to setoff and recoupment. The court finds no validity to this argument at the present time. If the Trustee attempts to foreclose on the liens prior to this court's determination of GM-DI's liability, GM-DI at that time can seek immediate injunctive relief from this court. And, of course, after a judgment is entered in this proceeding, any efforts by the Trustee to collect additional amounts via foreclosure on the liens would be barred by res judicata, and again an appropriate subject of injunctive relief. Absent either of these occurrences, the court is unconvinced that the liens pose a threat to GM-DI's setoff rights.

Similarly, this court finds a present lack of validity to GM-DI's argument that the Trustee should be required to release the liens because foreclosure will impose an undue burden on the bankruptcy estate. As observed by the Trustee, mechanic's liens are a means of ensuring that a prevailing litigant will have the ability to recover any judgment obtained by it. This court is confident that if the costs of foreclosing on any mechanic's liens would exceed the net benefit to the estate, and no evidence has been presented on this point, the Trustee will exercise its fiduciary duty

9

at that time to abandon the liens. If the Trustee were to fail in that duty, GM-DI, as well as any other creditor or party in interest, may bring the matter to the court's attention. In the meantime, the mere possibility that the eventual cost of foreclosure may exceed the benefit is an insufficient basis to order the Trustee to release mechanic's liens held by the estate.

## IV.

An order will be entered in accordance with the foregoing, granting GM-DI's motion as it relates to the liens in Iowa and Texas, and denying the motion as it relates to liens in Illinois, New Jersey, and New York.

# # #