

**SIGNED this 29 day of July, 2010.**

                                                               **Marcia Phillips Parsons**
                                                   **UNITED STATES BANKRUPTCY JUDGE**

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
|     IMAGEPOINT, INC., | No. 09-31225 |
|             Debtor. | Chapter 7 |
| | |
| DAVID H. JONES, Trustee, | |
|     Plaintiff, | |
| vs. | Adv. Pro. No. 09-3070 |
| GM-DI LEASING CORPORATION, | |
|     Defendant. | |

### M E M O R A N D U M

APPEARANCES:

    Reggie E. Keaton, Esq.                       Kimberley A. Yourchock, Esq.
    Frantz, McConnell & Seymour, LLP       Honigman Miller Schwartz and Cohn LLP
    Post Office Box 39                          2290 First National Bank Building
    Knoxville, Tennessee 37901              600 Woodward Avenue
    *Attorney for David H. Jones, Trustee*    Detroit, Michigan 48226
                                                          *Attorney for GM-DI Leasing Corporation*

**Marcia Phillips Parsons, United States Bankruptcy Judge**. In this adversary proceeding, plaintiff David H. Jones, the chapter 7 trustee, seeks to collect a debt allegedly owed to the estate; the defendant GM-DI Leasing Corporation has counterclaimed. Presently before the court are the Trustee's motions to amend the complaint and his answer to the counterclaim pursuant to Federal Rule of Bankruptcy Procedure 7015. GM-DI opposes the motion, asserting that the proposed amendments are futile, that the Trustee has unduly delayed in filing the motions and filed them in bad faith and with a dilatory motive, and that the proposed amendments will unduly prejudice GM-DI. For the reasons discussed hereafter, the court rejects GM-DI's objections and will grant the Trustee's motions for leave to amend. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

I.

On March 9, 2009, an involuntary bankruptcy petition was filed against ImagePoint, Inc., a Tennessee corporation engaged in the business of manufacturing, assembling, and installing signs for various enterprises nationwide. The court thereafter entered an order for relief under chapter 7, as well as a subsequent order converting the case to chapter 11, with ImagePoint operating for a while as a debtor in possession. On June 24, 2009, the case was reconverted to chapter 7, and David H. Jones was appointed trustee.

While operating as a debtor in possession, ImagePoint commenced on May 27, 2009, this adversary proceeding under 11 U.S.C. § 542(a) against GM-DI, a Delaware corporation with its principal offices in Michigan. As set forth in the complaint, ImagePoint sought a judgment in the amount of $3,171,179.53 for signage sold to GM-DI prepetition. GM-DI answered the complaint and counterclaimed, alleging breach of contract and breach of express and implied warranty. GM-DI also asserted in its counterclaim that it is entitled to recoup and/or setoff amounts in excess of those the Trustee seeks to recover. The Trustee filed an answer to GM-DI's counterclaim on November 11, 2009.

On May 4, 2010, the Trustee filed the present motions to amend. From the court's review, the proposed amendment to the complaint essentially adds four new claims. First, the Trustee seeks to add a claim for $91,600 for services rendered by ImagePoint to GM-DI pursuant to a Service Agreement between the parties. The Trustee makes certain allegations concerning this debt,

2

including that it was incurred by GM-DI within the 90 days preceding the bankruptcy filing, while ImagePoint was insolvent, and for the purpose of obtaining a right of setoff, such that under 11 U.S.C. § 553(a)(3) GM-DI is not entitled to any offset. Second, the Trustee seeks to add the claim that GM-DI improved its position by offsetting debts that it owed to ImagePoint within ninety days before the date of the filing of the petition, which such offset amounts the Trustee is entitled to recover under 11 U.S.C. § 553(b).

The third claim that the Trustee seeks to add to the complaint involves certain settlement negotiations between the parties during this bankruptcy case. According to the proposed amendment:

> ImagePoint and the defendant filed a joint motion on May 4, 2009, in the Chapter 11 proceeding to approve compromise of claims, approve process and parameters to resolve liens and related claims and approve compromises. As part of the agreement between ImagePoint and the defendant to file the joint motion, the defendant had agreed to pay the balance owed by the defendant to ImagePoint after permitted setoffs, and that payment was to be made by May 31, 2009. The defendant induced ImagePoint to enter the agreement by misrepresenting that defendant was willing to and would make payment of the balance owed to ImagePoint. The defendant failed to comply with the agreement by refusing to pay any sum to ImagePoint. Under the theories of promissory estoppel, equitable estoppel, breach of the agreement, and breach of implied covenant of good faith and fair dealing, the defendant should not be entitled to any setoff as set forth in the joint motion, but instead should be required to pay the Trustee the full sum of damages requested in this lawsuit, plus interest.

The fourth and last proposed amendment to the complaint involves a 2004 Supply Agreement between the ImagePoint and GM-DI. According to the proposed amendment, a provision in this Agreement provides: "If raw materials markets become unstable resulting in price fluctuations, ImagePoint may submit a request for consideration of a temporary price adjustment. Implementation of any such price adjustment will be at the sole discretion of GM-DI." The Trustee alleges in his proposed amendment that pursuant to this contractual provision, ImagePoint submitted requests to GM-DI for price adjustments, which requests GM-DI denied. The Trustee alleges that in denying the requests GM-DI "materially breached the supply agreement contract by failing to exercise discretion honestly and in good faith . . . . The defendant's rejection of the requests was unreasonable, arbitrary, capricious and an abuse of discretion [and] a breach of the defendant's implied covenant of good faith and fair dealing." According to the Trustee, ImagePoint "suffered

damages in excess of $8,000,000.00 [which] contributed to the ultimate insolvency of ImagePoint."

The Trustee's motion to amend his answer to GM-DI's counterclaim seeks to add allegations similar to those that the Trustee desires to add to the complaint.[1]  GM-DI opposes both motions.  GM-DI contends that the motions should be denied because: (1) the Trustee's new claims and defenses are futile; (2) the Trustee unduly delayed in bringing the motions; (3) the Trustee delayed discovery and filed the present motions in bad faith and with a dilatory motive; and (4) the proposed amendment would result in undue prejudice to GM-DI.  In response, the Trustee argues that his claims are meritorious and properly pled, that he did not delay in bringing the motions, and that they are brought in good faith.  The Trustee also maintains that allowing the proposed amendments will not unduly prejudice GM-DI because the trial will not be held for several months and because GM-DI would expend less resources if the new claims were litigated in the context of this adversary rather than in a separate action.

II.

Rule 15 of the Federal Rules of Civil Procedure, made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7015, provides that leave to amend should be freely given when justice so requires.  *See* Fed. R. Civ. P. 15(a)(2).  The Sixth Circuit Court of Appeals has advised that in deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment.  *Brumbalough v. Camelot Care Ctrs., Inc.,* 427 F.3d 996, 1001 (6th Cir. 2005).

III.

The court will first address GM-DI's contention that the Trustee's motions should be denied because the amendments would be futile.  A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988).  Stated differently, a

---

[1] In his proposed amended answer to the counterclaim, the Trustee also contends that the causes of action alleged by GM-DI are barred by the applicable statutes of limitations.  However, GM-DI makes no specific reference to this proposed amendment in its response in opposition.

4

proposed amendment is futile if it can not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). GM-DI makes the futility argument about each of the four new claims that the Trustee seeks to add to the complaint. Accordingly, the court must determine whether each claim can withstand a Rule 12(b)(6) motion.

    A. *Claims Arising Under 11 U.S.C. § 553(a)(3) and § 553(b)*

With respect to the first two claims based on §§ 553(a)(3) and (b) of the Bankruptcy Code that the Trustee seeks to add to the complaint, GM-DI argues that the Trustee has proffered a mere "'formulaic recitation of the elements' without citing to one fact that supports his claims." As such, GM-DI contends that the proposed amendments are futile because they would not withstand a motion to dismiss.

Undeniably, a complaint must contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993). Rather, it must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___ ,129 S. Ct. at 1949, 1950 (2009).

The court concludes from its examination of the proposed amendments that the Trustee has met this standard with respect to the first two claims. Regarding the § 553(a)(3) cause of action, the Trustee alleges that GM-DI owes the bankruptcy estate the sum of $91,600 for services ImagePoint provided under the parties' April 1, 2007 Service Agreement and attaches to the proposed amendment a copy of the invoice in question. The proposed amendment also states that GM-DI incurred this debt within 90 days before the date of the filing of the involuntary bankruptcy while ImagePoint was insolvent for the purpose of obtaining a right of setoff, such that GM-DI is not entitled to a setoff under § 553(a)(3) of the Bankruptcy Code. Undeniably, these facts are sufficient to state a claim for relief that is plausible on its face.

As to § 553(b), the proposed amended complaint provides that "if the Court finds that the defendant had claims against the plaintiff, the defendant improved its position by offsetting debt that defendant owed to ImagePoint within ninety days before the date of the filing of the petition, and

5

the defendant refused to pay invoices due because of the offset. Under 11 U.S.C. § 553(b), the Trustee is entitled to recover this amount offset." Although the facts presented are not detailed, they are sufficient to allow the court to draw the reasonable inference that GM-DI did not pay the amount owed in an attempt to offset the amount ImagePoint owed. Accordingly, GM-DI's argument that it would be futile to add the first two new claims to the complaint is rejected.

### B. *Claim Arising Out of the Bankruptcy Settlement*

The third new claim that the Trustee seeks to assert against GM-DI pertains to the parties' previous agreement to a settlement process whereby the parties would determine the setoffs permitted GM-DI, which would then pay to the Trustee by May 31, 2009, the balance owed to the estate. This agreement was set forth in a May 4, 2009 motion and approved by the court in an order entered May 11, 2009. The Trustee alleges in the proposed amended complaint that GM-DI failed to comply with the agreement by refusing to pay any sum to ImagePoint, and that under the theories of promissory estoppel, equitable estoppel, breach of the agreement, and breach of implied consent of good faith and fair dealing, GM-DI should not be entitled to any setoff and, instead, should be required to pay the full amount owing to the estate.

In its objection to this proposed amendment, GM-DI argues that the Trustee's claims in this regard are futile because the parties' agreement expressly provided, as set forth in the motion, that "[i]f Debtor and GM cannot agree on the Permitted Setoffs by May 31, 2009, Debtor shall have the right to commence an appropriate proceeding to determine the Permitted Setoffs." Thus, contends GM-DI, it was always contemplated that the parties might not be able to resolve their dispute and that litigation might be necessary. However, the mere fact that the parties may have recognized at the outset that they might not be able to eventually resolve their dispute does not preclude the contention that GM-DI entered into the settlement negotiations in bad faith, without any intent of paying ImagePoint the amount determined to be owed. Accordingly, GM-DI's futility argument in this regard is without merit.

### C. *Claim for Breach of Implied Covenant of Good Faith and Fair Dealing*

The last futility argument pertains to the Trustee's proposed claim arising out of GM-DI's alleged refusal to grant ImagePoint's requests for price increases. In the proposed amended complaint, the Trustee alleges that the refusals were not only "unreasonable, arbitrary, capricious and an abuse of discretion," but also "a breach of the defendant's implied covenant of good faith and fair dealing."

GM-DI argues that an amendment to add this cause of action would be futile because Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing.

It is correct that "Michigan law does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing." *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. App. 1991). However, "the covenant of good faith and fair dealing is an implied promise contained in every contract." *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (Mich. App. 1992). The covenant provides "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* "Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Burkhardt v. City Nat'l Bank of Detroit,* 226 N.W.2d 678, 680 (Mich. App.1975) (quoting 3A *Corbin on Contracts* § 644). Thus, "[a] breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary." *Liggett Restaurant Group, Inc. v. City of Pontiac*, No. 256571, 2005 WL 3179679,*1 (Mich. App. 2005) (citing *Ferrell v. Vic Tanny Int'l Inc.*, 357 N.W.2d 669, 673 (Mich App. 1984)).

In examining Michigan law in this area, the Sixth Circuit has explained that "[d]iscretion arises when the parties have agreed to defer decision on a particular term of the contract." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). " Discretion also may arise from a lack of clarity or from an omission in the express contract. In either case, the dependent party must rely on the good faith of the party in control." *Id.* (quoting *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 n.2 (5th Cir. 1989))

Applying this standard to the case at hand, it is clear that discretion arose because the parties had agreed in the Supply Agreement to defer a decision on the prices that GM-DI would pay ImagePoint in the event "the raw materials markets [became] unstable resulting in price fluctuations." Undeniably, GM-DI's primary performance under the parties' agreement was payment for the signs fabricated by ImagePoint. Paragraph 3 of the Supply Agreement provided that ImagePoint, as Seller, agreed "to fabricate, assemble, remanufacture, transport, install, service and repair Dealership Identification Signs and certain replacement parts therefor; and GM-DI agrees to

pay [ImagePoint] for the fabrication, assembly, remanufacture, transportation, installation, service and repair of such Dealership Identification Signs and such replacement parts." The prices agreed upon by the parties were set out in Exhibit H to the Supply Agreement as incorporated by Paragraph 4.01. Consequently, on a routine basis, GM-DI's performance under the Agreement, i.e, the price that it would pay for goods, was not discretionary because it was specified in the Agreement. However, GM-DI's performance became discretionary in the event ImagePoint requested a temporary price adjustment due to price fluctuations in the raw materials market. As such, GM-DI's exercise of that discretion was subject to an implied covenant of good faith and fair dealing. *See, e.g., General Motors Corp. v. New A.C. Chevrolet, Inc*, 263 F.3d 296, 305 (3rd Cir. 2001) (concluding that provision in dealer agreement granting dealer "the sole discretion . . . pursuant to its business judgment" to approve dealer relocations gave rise, under Michigan law, to a good faith obligation).

Notwithstanding the forgoing, GM-DI points to a caveat to the implied covenant rule recognized by the Sixth Circuit in *Stevenson* that an implied covenant of good faith and fair dealing may not "override express contract terms," and that "when the parties have 'unmistakably expressed their respective rights' . . . the covenant does not adhere." *Stephenson v. Allstate Ins. Co.*, 328 F.3d at 826 (quoting, respectively, *Cook v. Little Caesar Enter., Inc.,* 210 F.3d 653, 657 (6th Cir. 2000), and *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d at 877 n.2 (5th Cir. 1989)). Because the *Stevenson* court declined to ascribe the implied covenant of good faith to a contract provision that gave an insurance company "exclusive judgment" to approve a transfer of accounts between agents, GM-DI argues by analogy that no implied covenant should adhere in the present case.

GM-DI's argument in this regard has superficial merit; a contract conveying "exclusive judgment" to a party is not substantively different, at least in this court's view, than a provision granting "sole discretion." Each term suggests or is a synonym of the other. Nonetheless, the court in *Stevenson* expressly noted that because the contract at issue provided that any decision concerning the transfer of accounts rested *exclusively* with a party, the contract before it "presumed no discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d at 827 (emphasis in original).

Upon closer inspection, the critical distinction in this regard does not appear to turn on the precise language used in the parties' agreement, but on whether the subject area is a "right" a party

8

has expressly bargained for such that it would be inappropriate to contradict this express right by an implied obligation of good faith, or whether the subject area pertains to a true discretionary manner of performance, as defined in *Stevenson*. *See id.* at 826-27; *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d at 877. Although reasonable minds may disagree on this point, this court remains convinced that the discretion granted to GM-DI in the present case to consider requests for temporary price adjustments falls within the latter category rather than the former.

"Whether a performance is a matter of a party's discretion depends on the nature of the agreement between them." *ParaData Computer Networks, Inc. v. Telebit Corp*, 830 F. Supp. 1001, 1005-06 (E.D. Mich. 1993) ("discretion is the hallmark of the covenant"). In this regard, the court notes that under Paragraph 38.01 of the Supply Agreement, GM-DI could terminate the agreement at its option upon thirty days' notice while ImagePoint could only terminate the agreement upon giving 365 days' notice, i.e., an entire year. In light of this disparity and thus the inability of ImagePoint to terminate its contract with GM-DI if its raw material prices skyrocketed, ImagePoint's ability to present a price adjustment request to GM-DI and then have GM-DI consider that request in good faith would appear to be a vital part of the parties' agreement. *See General Aviation, Inc. v. Cessna Aircraft Co*, 703 F. Supp 637, 644 (W.D. Mich. 1988), *aff'd in part and rev'd in part on other grounds*, 915 F.2d 1038 (6th Cir. 1990) ("[T]he chief purpose of the good faith obligation is to enable enforcement of contract terms in a manner consistent with the parties' reasonable expectations."). In fact, if there were no requirement that GM-DI exercise good faith in its consideration of ImagePoint's request, ImagePoint's contractual right to even submit a request and have it considered by GM-DI would be illusory, since arguably ImagePoint could submit such a request even absent such a provision in the Supply Agreement. *See General Motors Corp. v. New A.C. Chevrolet, Inc*, 263 F.3d at 334-335 ("Michigan law, through decisions such as *Burkhardt*, clearly teaches that it is these precise situations–situations in which one party retains unfettered control over part of its performance under a contract–that call most strongly for the application of an implied covenant of good faith.").

Lastly, in this regard, GM-DI argues that even if the Trustee has a legal basis to assert a claim for breach of the implied covenant of good faith and fair dealing, the Trustee has failed to plead sufficient facts establishing that GM-DI breached the covenant. According to GM-DI, the proposed amended complaint sets forth mere labels and conclusions and fails to allege facts that are

9

sufficient to state a claim for relief that is plausible on its face.

> This court disagrees. The proposed amendment provides at paragraphs 17 and 18 that:
>
>> After the Supply Agreement contract was entered, the raw materials markets became unstable, which resulted in severe price increases. Pursuant to the [previously-quoted] contractual provision, ImagePoint submitted requests to GM-DI for price adjustments. The requests were denied by the defendant. The defendant materially breached the supply agreement contract by failing to exercise discretion honestly and in good faith when rejecting the requests. The defendant's rejection of the requests was unreasonable, arbitrary, capricious and an abuse of discretion. Furthermore, this action by the defendant was a breach of the defendant's implied covenant of good faith and fair dealing.
>>
>> As a result of the defendant's material breach of the contract and the defendant's breach of the defendant's implied covenant of good faith and fair dealing, ImagePoint suffered damages in excess of $8,000,000.00. These damages have contributed to the ultimate insolvency of ImagePoint.

While, granted, the details presented are somewhat limited, nonetheless sufficient facts have been alleged to satisfy the plausibility standard of Rule 12(b)(6) and the pleading requirements of Federal Rule of Civil Procedure 8(a). According, GM-DI's objection on this basis will be rejected.

### IV.

The court turns next to GM-DI's argument that the Trustee's proposed amendments should be denied because the Trustee unduly delayed in filing the motions to amend. GM-DI asserts that ImagePoint, and by succession the Trustee, should have been aware of these claims and defenses at the time the original complaint and answer to GM-DI's counterclaim were filed and that no explanation has been given for the Trustee's failure to assert these claims and defenses previously.

In response, the Trustee asserts that the undue delay contention is without merit. He notes that at the time the bankruptcy case was converted from chapter 11 to chapter 7 on June 24, 2009, and the employment of his attorneys was approved on July 6, 2009, there were a number of adversary proceedings pending, including the present one, and many other potential adversary proceedings that needed to be investigated to determine whether actions should be filed. The Trustee argues that "given the challenges faced by the Trustee, the complexity of the legal issues involved in the case and the voluminous number of other adversary proceedings and potential adversary proceedings that the Trustee has been required to investigate and pursue," the approximate

ten months that passed between his attorneys' employment and the filing of the instant motions to amend is "certainly reasonable."

The court agrees. This adversary proceeding was commenced on May 27, 2009, and the motion to amend was filed on May 4, 2010, less than a year later. Discovery is still pending; this is the Trustee's first request to amend. Further, as argued by the Trustee, because of the number and complexity of the proceedings pending in ImagePoint's bankruptcy case at the time of the Trustee's appointment, the Trustee's delay in seeking the instant amendments does not appear to be undue or unreasonable.

Moreover, unjustified delay alone is an insufficient reason for denying leave to amend. *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986). "Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading." *Tefft v. Seward,* 689 F.2d 637, 640 n.2 (6th Cir. 1982); *see also Moore v. City of Paducah*, 790 F.2d at 562 ("[I]t is well-settled that delay alone is not a sufficient reason for denying leave. . . . The delay must have resulted in prejudice to the party opposing the motion.").[2] Thus, neither mere delay nor alleged failure by the Trustee to justify the delay provides a legally sufficient basis to deny the Trustee leave to amend.

V.

The court turns next to GM-DI's argument that the Trustee's motions to amend are made in

---

[2] Notwithstanding the Sixth Circuit Court of Appeals' clear position in this regard, GM-DI argues that two decisions of the court support the proposition that motions for leave to amend may be denied where the movant has failed to establish good cause for the delay in filing the motions. *See Commerce Benefits Group, Inc. v. McKesson Corp*, 326 Fed. Appx. 369 (6th Cir. 2009); *Duggins v. Steak 'N Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999). However, neither of these cases support this contention, and both are factually dissimilar from the present case. In *McKesson*, the court of appeals affirmed the district court's denial of motions to file third and fourth amended complaints, noting that the scheduling order's deadline to amend had passed and that under Rule 16(b) of the Federal Rules of Civil Procedure a scheduling order may be modified only for good cause. Also in *McKesson*, at the time of the motions to amend the case had progressed past the deadlines for discovery and for filing dispositive motions, and the defendant had already moved for summary judgment. Almost identical facts were present in *Steak 'N Shake*. And significantly in both cases, the district courts had found that the defendants would be prejudiced by the proposed amendments, a conclusion not found by this court as subsequently discussed.

bad faith and with a dilatory motive. According to GM-DI, "[t]he Trustee dragged out the discovery process by failing to respond in a meaningful manner to GM-DI's relevant discovery requests and took advantage of GM-DI's willingness to work toward an out-of-court resolution of the discovery dispute by inducing GM-DI to extend the scheduling order in this case." In response, the Trustee denies any lack of good faith or a dilatory motive, and asserts to the contrary that he has worked diligently to resolve any discovery disputes, attaching as proof a May 5, 2010 letter that his counsel wrote to GM-DI's counsel. The Trustee also asserts that it was GM-DI who filed the motion to extend the scheduling deadlines and to move the trial date, and notes that GM-DI did not answer until April 2, 2010, the discovery requests served on January 11, 2010.

As previously noted, leave to amend may be denied if the purpose of the amendment is to use delay to harass the party's opponent. *Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988). A finding of bad faith may be predicated upon a lengthy delay in asserting the amendment. *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846-47 (5th Cir. 1992). Similarly, bad faith may be found based upon a party's dilatory conduct during the discovery process. *In re Acceptance Ins. Co., Inc., Securities Litigation*, 352 F. Supp.2d 928, 935 (D. Neb. 2004).

Although no evidentiary hearing has been conducted in this matter, the court sees no indication of bad faith or dilatory motive on the part of the Trustee. As previously concluded, the Trustee's delay in making the request is not patently unreasonable. And the record in this case establishes that the Trustee is correct that it was GM-DI that moved to extend the trial date and discovery deadlines. The argument that the Trustee "failed to respond in a meaningful manner to GM-DI's discovery requests" appears to be based on the Trustee's objection to answering an interrogatory and producing documents regarding the reason ImagePoint ceased business operations prior to its bankruptcy filing. Although the Trustee's relevance objection may no longer be appropriate in light of the assertion in the proposed amendments that GM-DI's failure to grant ImagePoint's requests for temporary price adjustments contributed to ImagePoint's ultimate insolvency, the court sees nothing to support the contention that the Trustee engaged in "gamemanship" in asserting the objection, or that the Trustee was seeking to harass GM-DI or to secure an ulterior tactical advantage.

12

VI.

Lastly, the court turns to GM-DI's assertion that allowing the amendments would unduly prejudice it because substantial additional discovery will be required. In response, the Trustee observes that no depositions have been taken thus far and that the currently scheduled trial date of February 7, 2011, is far enough away to allow GM-DI to pursue any needed additional discovery. The Trustee admits that if the new claims are allowed GM-DI may have to expend additional resources, but argues that if mere need to defend against new claims constituted undue prejudice, no new claims would ever be permitted. The Trustee maintains that regardless of any additional expense, it is still more economical to try all the claims in the same lawsuit rather than in a separate proceeding.

"In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). If the new claims and defenses are related to the same basic set of circumstances as those presented in the original complaint, it would be appropriate to have all of the claims litigated at the same time. *See Jenn-Air Products Co. v. Penn Ventilator Co.*, 283 F. Supp. 591, 594 (E.D. Pa. 1968) ("[I]f plaintiff's motion were denied here a separate action against the defendant could be instituted and, in the absence of creating undue complications at trial, it is clearly preferable to dispose of all the contentions between the parties in one proceeding.").

Based on the current record, the court is unable to conclude that allowing the requested amendments would unduly prejudice GM-DI. As pointed out by the Trustee, discovery is still ongoing and there has been no assertion that the addition of these new claims will delay the scheduled trial. Moreover, even if allowance of the amendments adds to the cost of GM-DI's defense, it is still more economical and efficient to have these new claims considered in the context of this adversary proceeding than in a new action. Both the old and the new claims arise out of the same agreements between ImagePoint and GM-DI and overlap with respect to the setoff contentions. The cases cited by GM-DI in support of its argument that it would be unduly prejudiced if the proposed amendments are permitted are distinguishable from the case at hand. *See Wade v.*

13

*Knoxville Utilities Bd.*, 259 F.3d 452 (6th Cir. 2001) (at time of requested motion to amend, the deadline for filing dispositive motions had already passed, the defendant had already moved for summary judgment on all of the claims in the original complaint, more than 20 depositions had been conducted, and the new claims would require the defendant to secure new medical and expert witnesses); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F. 3d 299 (6th Cir. 2000) (leave to file a second amended complaint denied where request made nine months after the filing of first amended complaint and after grant of summary judgment and denial of motion to reconsider summary judgment); *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F. 2d 968 (6th Cir. 1973) (leave to amend denied where case had already been pending for over two years and defendant had already had to defend at both the district court and court of appeals levels). Accordingly, GM-DI's prejudice argument is rejected.

## VII.

The court having determined that leave to amend the complaint and the answer to the counterclaim is appropriate, the court will enter an order granting the Trustee's motions to amend.

# # #